LED WARDS, Judge.
Plaintiff/appellant Estate of Doris Hughes Adams (“Adams”) appeals the ruling of the trial court granting summary judgment in favor of defendant/appellee Home Health Care of Louisiana (“Home Health”). Ms. Adams underwent an emergency amputation of her left leg below the knee due to gangrene. She alleges that the infection occurred while she was under the care of Home Health and due to a breach of its standard of care. The trial court granted summary judgment in favor of Home Health based on the finding that Adams would be unable to prove damages at trial. For the following reasons, we affirm the ruling of the trial court.
Adams suffered from diabetes, which led to medical problems with her left heal, foot and leg. She was hospitalized at East Jefferson Hospital under the care of Dr. Frank Rabito for an extensive period of time. On February 21, 1995, Dr. Rabito discharged Adams from the hospital and put her in the care of Home [,^Health. Dr. Rabito also ordered that Adams be fitted with a special pair of orthopedic shoes designed and made by co-defendant Cantilever Shoe Store, Inc. (“Cantilever”). Nurses employed by Home Health were to care for Adams, monitor her status three times a week and report any changes to her physician.
Adams alleges that she immediately began to have problems with her orthopedic shoes designed by Cantilever. She developed a blister on her left foot which began to bleed. The blister allegedly developed as a result of walking in the misfitted shoes.
On February 25, 1995, Adams contacted one of her nurses, Roger Cole, who was *857 employed by Home Health. She informed Cole of the bleeding blister on her foot and was advised by Cole to take precautionary measures. On February 26, 1995, Cole visited Adams, noticed the new wound on her foot and contacted Dr. Rabito for instructions.
On February 27, 1995, Lois Guitterez, another nurse employed by Home Health, visited Adams. She noted a discoloration of Adams’ foot and cared for it accordingly, but she did not contact Dr. Rabito.
On March 1, 1995, Adams was again visited by Cole. He cared for the wound, but did not contact Dr. Rabito concerning any changes to her condition. That same day, Adams was taken by her daughter to East Jefferson Hospital because they were concerned about the wound. On March 6, 1995, an amputation of the leg was performed at East Jefferson by Dr. Kitziger.
On March 6,1996, Adams filed a petition for damages against Cantilever, Jean Sears, Home Health, Roger Cole, Frank Rabito, East Jefferson General Hospital, the Browne-McHardy Clinic and their insurers. Frank Rabito and the Browne-McHardy Clinic were subsequently dismissed by Adams from the suit. |4On February 19, 1998, Adams died of causes unrelated to the present suit. Her estate was substituted as the proper party plaintiff.
On March 3, 1999, Cantilever and Jean Sears filed a motion for summary judgment alleging that the shoes designed and sold to Adams were not unreasonably dangerous at the time that they were manufactured.
On April 26, 1999, Home Health and Cole filed a motion for summary judgment on the issue of damages. In this motion, Home Health alleged that none of the witnesses listed on Adams’ pre-trial witness list were able to and/or qualified to testify as to damages. Adams would therefore be unable to carry her burden of proof under LSA-R.S. 9:2794. On May 6, 1999, Cantilever filed a supplemental memorandum in support of its motion for summary judgment in which it adopted the arguments and memorandum filed by Home Health.
On June 28, 1999, the two motions for summary judgment were heard before the Honorable Henry G. Sullivan Jr. of the Twenty-Fourth Judicial District Court. At the conclusion of the hearing, the trial court granted summary judgment on behalf of Home Health and Cole. A written judgment was signed on July 1, 1999. Adams filed a motion for suspensive appeal on June 29, 1999, which was subsequently granted by the trial court. The motion for summary judgment filed by Cantilever was taken under advisement after the hearing. On July 20, 1999, a written judgment was signed denying Cantilever’s motion for summary judgment. Adams’ appeal of the trial court’s ruling in favor of Home Health is now before this Court for review.
LAW AND ANALYSIS
Adams alleges two assignments of error on appeal. In her first assignment of error, Adams alleges that the trial court committed manifest error when it 1 sfound that there were no genuine issues of material fact in dispute related to the issue of damages caused by the neglect and breach of standard of care of Home Health. In her second assignment of error, Adams alleges that the trial court committed manifest error by ignoring the uncontradicted expert testimony of a home health care nurse that damages were caused by the neglect and breach of standard of care of Home Health. There are no genuine issues of material fact in dispute and the judgment of the trial court must be affirmed.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judg *858 ment is appropriate.[1] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.[2] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case.[3] There must be a “genuine” or “triable” issue on which reasonable persons could disagree.[4]
In her first assignment of error, Adams alleges that the trial court committed manifest error when it found that there were no genuine issues of material fact in dispute related to the issue of damages caused by the neglect and breach of standard of care of Home Health. The amended version of LSAj^C.C.P. art. 966 now proclaims that the summary judgment procedure is favored and shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions.[5] Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show “that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.”[6] A material fact is one that would matter on the trial of the merits.[7]
Home Health’s motion for summary judgment on the issue of damages alleges that Adams will be unable to call any expert witness at trial who is qualified to address the issue of damages. Specifically, Home Health alleges that while Althea Gelpi, R.N. and/or Crystal Keller, R.N. are qualified to testify as to the standard of care provided by Home Health, they are not qualified to testify as to any damages which may have resulted from its conduct. The trial court agreed and held that summary judgment was appropriate because the nurses were not qualified to testify as to damages and the testimony of the doctors listed on the witness list did not support Adams’ claims. Under these circumstances, the trial court held that there were no genuine issues of material fact in dispute and Home Health was entitled to a judgment as a matter of law.
In her second assignment of error, Adams alleges that the trial court committed manifest error by ignoring the uncon-tradicted expert testimony of a home health care nurse that damages were caused by the neglect and breach of ^standard of care of Home Health.
The requirements for proving a claim against a physician in a malpractice action based on negligence are codified in LSA-R.S. 9:2794. Under the statute, the plaintiff carries a two-fold burden of proof.[8] The plaintiff must first establish by a preponderance of the evidence that the doctor’s treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained.[9] The standards governing the actions of medical professionals *859 by legislative fiat are established by custom, and as medical professionals, nurses are subject to the same standard as doctors.[10] Under the jurisprudence as set forth in Donaldson, LSA-R.S. 9:2794 applies to Home Health and its employee nurses. To substantiate a claim under this statute, Adams must be able to prove a breach in the standard of care and must be able to establish a causal relationship.
In granting the summary judgment in favor of Home Health, the trial court held that the nurses were not qualified to testify as to damages and the testimony of the doctors hsted on the witness list did not support Adams’ claims. Notwithstanding the testimony of Dr. Rabito, the Supreme Court has held that a plaintiff can prevail in a medical malpractice action when she does not introduce an expert witness to testify as to the applicable standard of care, its breach, and causation.[11] As a general rule, a plaintiff can prevail under such circumstances |swhen a defendant/physician or a defense expert testifies regarding the standard of care, and the objective evidence at trial is such that a lay jury can infer negligence from the facts.[12] For example, expert testimony is not required where the physician does an obviously careless act from which a lay person can infer negligence.[13]
In the present case, Home Health contends that the amputation would have been necessary regardless of any alleged negligence on its part. It cites Dr. Rabi-to’s testimony to the fact that he recommended amputation before Adams was sent home from the hospital. Also, the facts of this case are substantially different from those the Supreme Court based its findings on in Pfiffner. The actions of the Home Health nurses were not obviously careless acts from which a lay person can imply negligence. It has already been established that the amputation of Adams’ leg was previously recommended and may have been a foregone necessity. Under these circumstances, an expert witness is required to determine any damages which may have been incurred by Adams. Absent expert medical testimony, it is impossible to establish damages to any reasonable degree of certainty. The trial court did not err in granting Home Health’s motion for summary judgment.
In summary, it is the opinion of this Court that there are no material issues of fact in dispute which preclude summary judgment. The trial court did not err in holding that Dr. Rabito would be unable to testify that Adams’ damages were a proximate result of the alleged breach of standard of care by Home Health. Also, the trial court did not err in holding that the nurses tendered by Adams as 19expert witnesses were not qualified to testify as to damages. Since Adams has not provided expert witness testimony to prove that damages were caused by the neglect and breach of care of Home Health, there are no genuine issues of material fact in dispute and the judgment of the trial court must be affirmed.
AFFIRMED.
CANNELLA, J„ DISSENTS WITH REASONS.

. Bua v. Dressel, 96-79 (La.App. 5th Cir. 5/28/96), 675 So.2d 1191; writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348; citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.

. Tassin v. City of Westwego, 95-307 (La.App. 5 th Cir. 12/13/95), 665 So.2d 1272.

. Rowley v. Loupe, 96-918 (La.App. 5 th Cir. 4/9/97), 694 So.2d 1006.

. Id. at 1008.

. Tonubbee v. River Parishes Guide, 97-440 (La.App. 5th cir. 10/28/97), 702 So.2d 971; writ denied, 97-3012 (La.2/13/98), 709 So.2d 747.

. Id. at 974.

. J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5 th Cir. 2/14/96), 670 So.2d 1305.

. Martin v. East Jefferson General Hosp., 582 So.2d 1272 (La.1991).

. Id. at 1276.

. Donaldson v. Sanders, 94-1366 (La.App. 3 rd Cir. 7/19/95), 661 So.2d 1010.

. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La. 10/17/94), 643 So.2d 1228.

. Id. at 1230.

. Id. at 1233.